UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division


WATERSIDE CAPITAL CORPORATION,
CAPITAL SOUTH PARTNERS FUND I, L.P.,
and
WESLACO HOLDING COMPANY, LLC,

        Plaintiffs,

v.                              2:05CV727

HALES, BRADFORD & ALLEN, LLP,
HALE-BRADFORD, L.L.P.,
SALINA, ALLEN & SCHMIDTT, LLP,
BILLY R. BRADFORD, JR.,
and
DARRYL D. BAIRD,

        Defendants.


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on defendants' motions to dismiss for lack of personal jurisdiction and on plaintiffs' motion for partial summary judgment. For the reasons which follow, the Court recommends that plaintiffs' motion for partial summary judgement be GRANTED and defendants' motions to dismiss be DENIED.

The matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and ©, and Rule 72 of the United States District Court for the Eastern District of Virginia, by order of reference entered April 5, 2006. The Court has original jurisdiction in this action pursuant to 28 U.S.C. § 1331.

## I.  STATEMENT OF THE CASE

### A.  Background

Caldwell/VSR, Inc. (CVI), was a Virginia corporation in the business of applying paint and stain finishes to wood, blinds, and shutter components.  CVI  manufactured its products at a facility in Weslaco, Texas, with corporate headquarters in Mechanicsville, Virginia. (Compl. ¶ 16.)  In February 2001, CVI engaged the Texas accounting firm of Hales, Bradford & Allen, LLP[1] (HBA), to audit its financial statements, report whether the financial statements conformed with generally accepted accounting principles (hereinafter "the Principles"), and  prepare CVI's federal income tax returns. (Compl. ¶ 20.)  In June 2001, HBA submitted an audit report, in accordance with the letter of February, 2001, which essentially stated that CVI's accounting practices were in compliance with the Principles.   (HBA and Salinas' Mot. to Dismiss (Doc. 13) at 3.)

Plaintiffs began a financial relationship with CVI, in which they provided loans for capital investment through the purchase of debentures.  The initial purchase of debentures on December 11, 2001, was in the sum of 3.45 Million Dollars, and the second purchase on October 31, 2003, was in the sum of 1.1 Million Dollars.  (Compl. ¶ 41, 50.) Plaintiffs allege that on both occasions, they relied upon the audit

---

[1]  After the events in question, the accounting firm Hales, Bradford and Allen, LLP, became two separate entities: Hales-Bradford, LLP, and Salinas, Allen and Schmitt, LLP.  Hales-Bradford, LLP; Billy R. Bradford; and Darryl D. Baird are referred in the motions to dismiss as the "Brownsville Defendants," and Hales, Bradford & Allen, LLP, and Salinas, Allen and Schmitt, LLP, are referred to as the "Weslaco Defendants."  Each set of defendants has filed separate motions to dismiss.

reports and representations of HBA in deciding whether to extend financing to CVI. (Compl. ¶¶ 30, 41, 68.)

At the conclusion of the transaction of December, 2001, plaintiffs insisted upon receiving a statement from HBA regarding CVI's financial position. (Pls.' Mot. and Mem. for Partial Summ. J. at 7.) Grant Grayson, Esquire, CVI's attorney, contacted Darryl D. Baird at HBA, who was responsible for the bulk of the auditing work , to inform him of plaintiffs' request. (Id. at 5, 8.) On December 10, 2001, Baird, after consulting with Billy Bradford, HBA's partner, faxed and mailed letters directly to plaintiffs in acknowledgment of their pending loan transaction with CVI. (Id. at 12.) The letters stated that HBA had conducted an independent auditor's report and concluded that the financial statements were fair representations of CVI's financial position. (Id.)

In the course of performing the initial audit, HBA also consulted with CVI's previous accounting firm, Goodman & Company in Richmond, Virginia. (Pls.' Mot. and Mem. for Partial Summ. J. at 15.) From May, 2001, through June, 2001, Baird, Bradford, and Cris Villareal, Baird's co-worker, initiated a number of communications with Goodman & Company in order to gather information and resolve questions. (Id. at 16-18.)

HBA performed similar audits for CVI for fiscal years 2002, 2003, and 2004. According to defendants, all accounting services were performed exclusively in Texas, and all auditor's reports, except for the 2004 reports, were issued and delivered to CVI's Texas office. (HBA and Salinas' Mot. to Dismiss at 6.) However, at various times in the course

of doing work for CVI, Baird contacted CVI's Chief Financial Officer, Tom Muse, who worked at CVI's corporate headquarters in Mechanicsville, Virginia. (Pls.' Mot. and Mem. for Partial Summ. J. at 19.) The consultations were initiated to "reconcile differences" with audited numbers, "update [an] inventory analysis," and to get approval to print financial statements. (Id. at 19, 20.) In the first three years, which encompasses the time period of plaintiffs' second loan transaction with CVI in 2003, HBA's Independent Auditor's Reports stated the unqualified opinion that CVI's financial statements fairly presented their financial position, and the results of operations and cash flows were in conformity with the Principles. (Id. at 5, 6.)

On December 15, 2004, CVI filed for Chapter 11 bankruptcy pursuant to 11 U.S.C., in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division. (Compl. ¶ 60.) On June 23, 2005, the petition was converted to a Chapter 7 bankruptcy. In the course of the bankruptcy proceedings, plaintiffs established Weslaco Holding Company, which purchased substantially all of CVI's remaining assets. (Compl. ¶¶ 3, 64.) Plaintiffs subsequently discovered irregularities in CVI's accounting methods, which they contend should have been flagged by HBA in conducting the audits. (Compl. ¶ 65.)

As a result of CVI defaulting on its loans, on December 9, 2005, plaintiffs filed the instant action against defendants, alleging: (1) third party beneficiary breach of contract, (2) professional malpractice, (3) constructive fraud/negligent misrepresentation, and (4) fraudulent misrepresentation. (Pls.' Mot. and Mem. for Partial Summ. J. at 1.) Plaintiffs seek recovery of their losses in the estimated sum of

4

Four Million Dollars ($4,000,000.00).  (Compl. ¶ 70.)  On February 14,
2006,  Hales-Bradford, Baird, and Billy Bradford filed a motion to
dismiss, and on March 1, 2006, HBA and Salinas filed a motion to dismiss.
Both motions are based on the ground that, <u>inter</u> <u>alia</u>, the Court lacks
personal jurisdiction over them.  On April 20, 2006, the matter came on
for oral argument, but the Court continued the matter to permit the
parties to engage in limited discovery on the issue of personal
jurisdiction.  On November 13, 2006, the Court heard oral argument on the
issue of personal jurisdiction.

### B.  Issue

The sole issue in this case is whether the Court may exercise
personal jurisdiction over defendants.

## II.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.  Motion for Summary Judgment Standard

As set forth in Rule 56 of the Federal Rules of Civil
Procedure, summary judgment is appropriate when the moving party can show
by affidavits, depositions, admissions, answers to interrogatories, the
pleadings, or other evidence, "that there is no genuine issue as to any
material fact and that the moving party is entitled to a judgment as a
matter of law." Fed. R. Civ. P. 56©.  Rule 56 mandates entry of summary
judgment against a party who "after adequate time for discovery and upon
motion . . . fails to make a showing sufficient to establish the
existence of an element essential to that party's case, and on which that
party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>,
477 U.S. 317, 322 (1986).

The moving party is not entitled to summary judgment if there is a genuine issue of material fact in dispute.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine issue of fact exists if a reasonable jury could return a verdict for a nonmoving party.  See id.  In other words, summary judgment appropriately lies only if there can be but one reasonable conclusion as to the verdict.  See id.

Finally, as the Fourth Circuit explained,

> [W]e must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion.  Summary judgment is appropriate only where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, such as where the non-moving party has failed to make a sufficient showing on an essential element of the case that the non-moving party has the burden to prove.

Tuck v. Henkel Corp., 973 F.2d 371, 374 (4th Cir. 1992)(citations omitted).

## B.  Motion to Dismiss Standard

In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the complaint is construed in the light most favorable to plaintiff and his or her allegations are taken as true.  See Brower v. County of Inyo, 489 U.S. 593, 598 (1989)(citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  The complaint should not be dismissed unless it appears to a certainty that plaintiff can prove no facts in support of his or her claim which would entitle him or her to relief.  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Martin Marietta Corp. v. International Telecomms. Satellite Org., 991 F.2d 94, 97 (4th Cir. 1993); Bruce v. Riddle, 631 F.2d 272, 273-74 (4th Cir. 1980).  The courts must construe

the complaint liberally in favor of plaintiff, even if recovery appears remote and unlikely.  See Jenkins, 395 U.S. at 421.  In ruling on a 12(b)(6) motion, the court primarily considers the allegations in the complaint but may consider attached exhibits and documents incorporated by reference.  See Simons v. Montgomery County Police Officers, 762 F.2d 30, 31 (4th Cir. 1985); Wolford v. Budd Co., 149 F.R.D. 127, 129-32 (W.D. Va. 1993).

### C.  The Court may exercise personal jurisdiction over defendants.

When a defendant challenges the existence of personal jurisdiction, the plaintiff ultimately bears the burden of showing personal jurisdiction by a preponderance of the evidence.  Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989).  In considering such a challenge on the bases of the pleadings, supporting legal memoranda, and allegations in the complaint, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction."  Id.

Courts may find either general or specific personal jurisdiction, depending on the degree and nature of the defendant's activities in the forum state.  See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984).  When a defendant's activities within a state are substantial and pervasive, courts may exercise general jurisdiction.  Id. at 415-16.  By contrast, specific jurisdiction may apply, even where the defendant's activities are limited, provided that the cause of action "arises out of," or bears a direct relationship to, the defendant's conduct in the forum state.  Id. at 414.  If a

nonresident defendant engages in purposeful activity in the forum state, even a single act may constitute sufficient contact for a court to exercise personal jurisdiction.  See, e.g., Cancun Adventure Tours, Inc. v. Underwater Design Co., 862 F.2d 1044, 1046 (4th Cir. 1988).  In the present case, plaintiffs assert specific personal jurisdiction.

In a suit based on state law claims, there must be a statutory source for personal jurisdiction.  In Virginia, jurisdiction over a nonresident defendant is governed, in part, by the Virginia long-arm statute. VA. CODE ANN. § 8.01-328.1.  The pertinent provisions of the long-arm statute set forth that "a court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:  (1) Transacting business in this Commonwealth; (2) Contracting to supply services or things in this Commonwealth."  VA. CODE ANN. §  8.01-328.1(A).

The reach of a state's long-arm statute may extend to, but not beyond, constitutionally permissible limitations of the Due Process Clause of the Fifth Amendment.  Virginia's long-arm statute extends personal jurisdiction to such limits.  See Diamond Healthcare of Ohio, Inc. V. Humility of Mary Health Partners, 229 F.3d 448, 450 (4th Cir. 2000).  For this reason, it is not uncommon for the traditional two-part analysis--statutory and constitutional--to be merged into one when the "transacting business" sections of the statute are implicated.  Id.

The Due Process Clause requires sufficient minimum contacts with a forum state such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)(quoting

8

Milliken v. Meyer, 311 U.S. 457, 463 (1940)).  Minimum contacts exist where there is purposeful availment and foreseeability.  See Burger King v. Rudzewicz, 471 U.S. 462, 474-75 (1985).  "It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  Hanson v. Denckla, 357 U.S. 235, 253 (1958).  The foreseeability contemplated by the court does not hinge on the "mere likelihood" that the defendant's actions will have an effect in another state.  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).  Rather, it is essentially a notice provision related to whether the "defendant's conduct and connection with the forum state [be] such that he should reasonably anticipate being haled into court there."  Id.

Furthermore, where the contact involves interstate contractual obligations, the court has expressly held that "citizens who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." Burger King, 471 U.S. at 473 (quoting Travelers Health Assn. v. Virginia, 339 U.S. 643, 647 (1950)).

Accordingly, the Fourth Circuit has established a three-part approach to specific personal jurisdiction.  This approach examines: "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be

constitutionally reasonable." ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir.2002). With respect to part two, the foreseeability prong, the Fourth Circuit has emphasized that reasonable anticipation is satisfied when the defendant's actions have been "directed at the forum state in more than a random, fortuitous, or attenuated way." ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 625 (4th Cir.1997). The "reasonableness" requirement in part three speaks to the weight of the burden placed on the defendant to defend the case in a foreign state and the degree to which the burden is appropriately offset by the interests of the forum state. See World Wide Volkswagen, 444 U.S. at 292. Further, the forum is constitutionally acceptable, unless it is "so gravely difficult and inconvenient that a party is unfairly put at a severe disadvantage in comparison to his opponent." Burger King, 471 U.S. at 478.

In the case before the Court, the relationship forged by and between HBA and CVI and defendants' associated activities, are sufficient to establish personal jurisdiction in the Commonwealth of Virginia. Applying the three-part approach, the Court first looks at the extent to which defendants purposefully availed themselves of the privileges of conducting activities in Virginia.

HBA provided its accounting services pursuant to an engagement letter signed by CVI, a Virginia corporation. Despite the fact that HBA performed its work in Texas and predominantly relied upon financial statements provided by CVI's Texas office, it is clear that defendants' contacts with CVI's corporate offices, its former accountants, or its clients, all in the Commonwealth of Virginia, were not mere happenstance.

Throughout their engagement with CVI, defendants conducted activities directed at the forum state.  While the activities may not have been substantial or pervasive (indeed, they need not be for specific jurisdiction), they were nonetheless purposeful.  Baird, and others at HBA working on the CVI account, made numerous contacts in the form of telephone calls, faxes, and emails with CVI representatives and plaintiffs themselves in Virginia for the express purpose of serving its client.

Plaintiffs' claims are based on their reliance upon the representations expressed in the auditor's reports and the competency with which the reports were written.  The reports were written for a Virginia corporation, are based on information gathered in part from entities in Virginia, and were subsequently relied upon by a Virginia-based company.  Defendants' activities which give rise to this suit are not limited to the faxing of transmittal letters to plaintiffs.  Plaintiffs assert that the loan transactions, particularly the first transaction, were conditioned upon the substance of the report and HBA's conclusion that CVI's accounting was in accordance with the Principles.  (Pls.' Mot. and Mem. for Partial Summ. J. at 12).  One reason why the deal did not close on December 10, 2001, as intended, was because plaintiffs had not yet received the acknowledgment letter from HBA.  (Id.)  Indeed, the situation in this case was in no way random or fortuitous as in World-Wide Volkswagen, where the Supreme Court held that a New York defendant could not be haled into an Oklahoma court because the driver of an automobile happened to suffer an accident there.  World-Wide Volkswagen, 444 U.S. 286 (1980).  Nor is defendants' contact with

Virginia attenuated as in ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617 (4th Cir.1997).  In ESAB, plaintiffs sought to bring suit in their home state of South Carolina for conspiratorial activities conducted between parties in New Hampshire and Florida.  Id.  The only "contact" with South Carolina on defendants' part was that plaintiffs were likely to suffer a loss of business in that state.  Id.  In the case before the Court, HBA's activities were directed at and between parties in Texas and Virginia for a Virginia client.  Since plaintiffs' claims stem from the activities, defendants' connections with Virginia cannot be said to be random, fortuitous, or attenuated.

Requiring a Texas corporation to defend itself in Virginia is not unreasonable under the circumstances.  The Court fails to see, and defendants have not offered, any significant reason why they would be at a severe disadvantage in having to defend itself in Virginia.  Moreover, in assessing the constitutional reasonableness of the jurisdiction, the Court is permitted to take into account the forum state's interest in hearing the suit.  See McGee v. International Life Insurance Co., 355 U.S. 220 (1957).  In light of recent high profile cases demonstrating the devastating effects of accounting malpractice, the Court notes that the Commonwealth of Virginia might have a strong interest in protecting its citizens from alleged misrepresentations and malpractice on the part of accounting firms doing business with corporations registered in this Commonwealth.

### III.  RECOMMENDATION

_____For the foregoing reasons, the Court recommends that plaintiffs' motion for partial summary judgment be GRANTED and defendants' motions to dismiss be DENIED.

## IV.   REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(c):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within ten days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three days permitted by Rule 6(e) of said rules.

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations.  See Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

_____/s/_____
**James E. Bradberry**
**United States Magistrate Judge**

Norfolk, Virginia

___December 14___, 2006

<u>Clerk's Mailing Certificate</u>

A copy of the foregoing Report was mailed this date to each of

the following:

    Ann B. Brogan, Esq.
    Frank J. Santoro, Esq.
    Kelly M. Barnhart, Esq.
    Marcus, Santoro & Kozak, P.C.
    1435 Crossways Blvd., Ste. 300
    Chesapeake, VA 23320-2896


    Brian N. Carey, Esq.
    Taylor & Walker, PC
    P.O. Box 3490
    Norfolk, VA 23514-3490


    Wilhelm Dingler, Esq.
    Jay S. Rothman, Esq.
    Marshall S. Gemberling, Esq.
    Marshall, Dennehey, Warner,
        Coleman & Goggin
    1845 Walnut St.
    Philadelphia, PA 19103


    Dante M. Filetti, Esq.
    Goodman, Allen & Filetti, PLLC
    215 Brooke Ave., Ste. A
    Norfolk, VA 23510


                        Fernando Galindo, Acting Clerk


                        By _____
                                 Deputy Clerk

                        _____, 2006

15