```
                UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA
                       Norfolk Division
```

**WATERSIDE CAPITAL CORPORATION,**
**CAPITALSOUTH PARTNERS FUND I, L.P.,**
**and**
**WESLACO HOLDING COMPANY, LLC,**

        **Plaintiffs,**

**v.**                                                          **2:05CV727**

**HALES, BRADFORD & ALLEN, LLP,**
**SALINAS, ALLEN & SCHMITT, LLP,**
**and**
**BILLY R. BRADFORD, JR.,**

        **Defendant.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

On December 9, 2005, plaintiffs filed a complaint in the Eastern District of Virginia, Norfolk Division against Hales, Bradford & Allen, LLP (HB&A); Hales-Bradford, L.L.P. (H-B); Salinas, Allen & Schmitt, L.L.P. (Salinas); Billy R. Bradford, Jr. (Bradford); and Darryl D. Baird. On February 14, 2006, H-B, Bradford, and Baird filed a motion to dismiss, and on March 1, 2006, HB&A[1] and Salinas filed a motion to dismiss. In response to the issue of personal jurisdiction and venue raised in the motions to dismiss, plaintiffs filed a motion for partial summary judgment on that issue alone. On December 14, 2006, this Court filed its report and recommendation, holding that personal jurisdiction and venue were proper. On February 27, 2007, the report and recommendation was adopted by the District Court.

---

[1] After the events in question, the accounting firm Hales, Bradford and Allen, LLP, split into two entities: Hales-Bradford, LLP, and Salinas, Allen and Schmitt, LLP. Furthermore, the defendants are divided into two camps. Hales-Bradford, LLP, Billy R. Bradford, and Darryl D. Baird are referred to in court documents as the "Brownsville Defendants." Hales, Bradford & Allen, LLP, and Salinas, Allen and Schmitt, LLP, are referred to as the "Weslaco Defendants." Each camp has filed its own motion to dismiss.

On March 16, 2007, the parties reached a settlement, which resulted in the dismissal of H-B, Bradford, and Baird. On April 4, 2007, CapitalSouth Partners Fund I, L.P. (CapitalSouth), voluntarily dismissed its claims against the remaining defendants. Thus, the remaining parties are plaintiffs Waterside Capital Corporation (Waterside) and Weslaco Holding Company, LLC (Weslaco), and defendants HB&A and Salinas. On May 11, 2007, this Court conducted a hearing to address the remaining issues defendants' motion to dismiss and motion to compel discovery, which was filed April 20, 2007.

The matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72 of the United States District Court for the Eastern District of Virginia, by order of reference entered April 5, 2006. The Court has original jurisdiction in this action pursuant to 28 U.S.C. § 1331.

### I.  STATEMENT OF THE CASE

#### A.  Background

Caldwell/VSR, Inc. (CVI), was a Virginia corporation in the business of applying paint and stain finishes to wood, blinds, and shutter components. CVI manufactured its products at a facility in Weslaco, Texas, but maintained its corporate headquarters in Mechanicsville, Virginia. (Compl. ¶ 16.) In February, 2001, CVI engaged HB&A, a Texas accounting firm, to audit its financial statements, report whether the financial statements conformed with generally accepted accounting principles (GAAP), and prepare CVI's federal income tax returns. (Compl. ¶ 20.) The terms were embodied in an engagement letter

signed by both parties in the state of Texas.  Pursuant to the contract, in June, 2001, HB&A submitted an audit report, which essentially stated that CVI's accounting practices were in compliance with GAAP.  (Compl. Exs. D, E.)

Waterside and CapitalSouth (collectively, the "Investors") began a financial relationship with CVI in which they provided loans for capital investment through the purchase of debentures.  On December 11, 2001, the initial purchase of debentures was $3.45 million, and the second purchase on October 31, 2003, was $1.1 million.  (Compl. ¶ 41, 50.)  Plaintiffs allege that on both occasions they relied upon the audit reports and representations of HB&A in deciding whether to extend financing to CVI.  (Compl. ¶¶ 30, 41, 68.)

Approaching the closing date of the December, 2001, transaction, it became clear to CVI that the Investors insisted upon receiving a statement from HB&A regarding CVI's financial position.  (Pls.' Mem. of Law in Opposition to Defs.' Mot. to Dismiss at 4.)  On December 10, 2001, after consulting with HB&A partner Bradford, Baird, an HB&A accountant, mailed letters directly to Waterside and CapitalSouth in acknowledgment of the Investors' pending loan transaction with CVI.  (Compl. ¶ 36, 37.)  The letters stated that HB&A had conducted an independent auditor's report, which concluded that the financial statements were fair representations of CVI's financial position.  (Compl. Exs. D, E.)  On December 11, 2001, defendants faxed certification letters to Waterside in Norfolk, Virginia.  (Compl. ¶ 40.)  Having received the letters, plaintiffs released the funds, and the transaction was completed.  (Compl. ¶ 41.)

HB&A performed similar audits for CVI for fiscal years 2002, 2003, and 2004.  According to defendants, all accounting services were performed exclusively in Texas, and all auditor's reports except for 2004 were issued and delivered to CVI's Texas office. (Defs.' Mot. to Dismiss at 6.)  In the first three years, which encompasses the time period of the Investors' second loan transaction with CVI in 2003, HB&A's independent auditor's reports stated the unqualified opinion that CVI's financial statements fairly presented their financial position and the results of operations and cash flows were in conformity with GAAP. (Compl. Exs. D, E; Compl. ¶ 44.)

On December 15, 2004, CVI filed a voluntary petition with the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division, under Chapter 11 of Title 11 of the United States Code.[2]  (Compl. ¶ 60.)  In the course of the bankruptcy proceedings, Waterside and CapitalSouth formed Weslaco, which purchased substantially all of CVI's remaining assets.  (Compl. ¶¶ 3, 64.)  Plaintiffs subsequently discovered irregularities in CVI's accounting methods, which they contend should have been flagged by HB&A in conducting the audits. (Compl. ¶ 65.)  CVI has defaulted on its loans and plaintiffs now seek to recover their losses, estimated at Four Million Dollars ($4,000,000.00), from the auditors. (Compl. ¶ 70.)  Plaintiffs assert claims for: (1) third party beneficiary breach of contract, (2) professional malpractice, (3) constructive fraud/negligent misrepresen-

---

[2] On June 23, 2005, the case was converted to one under Chapter 7 of the Bankruptcy Code.

tation, and (4) fraudulent misrepresentation.  (Defs.' Mot. to Dismiss at 2.)

## B. Issues

1. What is the appropriate state law, Texas or Virginia, governing the procedural and substantive aspects of plaintiffs' claims?

2. Have plaintiffs sufficiently stated a third party beneficiary breach of contract claim?

3. Have plaintiffs sufficiently stated a professional malpractice claim?

4. Have plaintiffs sufficiently stated a constructive fraud/negligent misrepresentation claim?

5. Have plaintiffs sufficiently stated a fraudulent misrepresentation claim?

6. Is plaintiffs' third party breach of contract claim barred by the applicable state's statute of limitations? and

7. Is plaintiffs' professional malpractice claim barred by the applicable state's statute of limitations?

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Motion to Dismiss Standard

In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the complaint is construed in the light most favorable to plaintiff and his or her allegations are taken as true. See Brower v. County of Inyo, 489 U.S. 593, 598 (1989)(citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  The complaint should not be dismissed unless it appears to a certainty that plaintiff can prove no facts in support of his or her claim which would entitle him or her to relief.  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Martin Marietta Corp. v. International Telecomms. Satellite Org., 991 F.2d 94, 97 (4th Cir. 1993); Bruce v.

Riddle, 631 F.2d 272, 273-74 (4th Cir. 1980). The courts must construe the complaint liberally in favor of plaintiff, even if recovery appears remote and unlikely. See Jenkins, 395 U.S. at 421. In ruling on a 12(b)(6) motion, the court primarily considers the allegations in the complaint but may consider attached exhibits and documents incorporated by reference. See Simons v. Montgomery County Police Officers, 762 F.2d 30, 31 (4th Cir. 1985); Wolford v. Budd Co., 149 F.R.D. 127, 129-32 (W.D. Va. 1993).

### B. Defendants' Motion to Dismiss

#### 1. Applicable state law

Since this Court is sitting in Virginia exercising diversity jurisdiction, Virginia's choice of law rules apply. Insteel Indus., Inc. v. Costanza Contracting Co., Inc., 276 F.Supp 2d 479, 483 (E.D. Va. 2003). Under Virginia law, contract validity, interpretation, and enforceability are governed by the place where the contract was made, while the law of the place of performance governs issues related to the performance of contractual duties. Johnson v. MPR Assoc., Inc., 894 F.Supp. 255, 258 n.1 (E.D. Va. 1994); Ins. Co. of N. America, Inc. v. U.S. Gypsum Co., 639 F.Supp. 1246, 1248 (W.D. Va. 1986). The Court finds that the engagement letters, which stated that HB&A would provide auditing services for CVI, represent the contracts at issue. The parties do not dispute that the engagement letters were executed in Texas and that HB&A's auditing services were primarily conducted at CVI's office in Weslaco, Texas. Additionally, as evidence that the engagement letters were the contract in question, the complaint alleges that on December 10, 2001, pursuant to HB&A's engagement with CVI, HB&A delivered the

certification to the Investors." (Compl. ¶ 72.) Therefore, with respect to contract-based claims arising out of the engagement letters, Texas law applies to all validity, interpretation, performance, and enforceability aspects.

During the hearing, plaintiffs argued that the letter of December 10, 2001, from HB&A represented a new agreement through which Waterside and CapitalSouth became third party beneficiaries. The clear implication of the argument is that Virginia contract law would govern the performance of the contract. However, even a generous reading of the letter does not support a finding that it was an instrument through which HB&A and CVI intended to confer a benefit on plaintiffs or entered into directly for plaintiffs' benefit. (Compl. Exs. D, E.)  While the letter acknowledges that HB&A was aware of plaintiffs impending transaction with CVI, it merely explained the purpose of HB&A (auditing the financial statements of CVI as of February 25, 2001) and stated their conclusion that the financial statements fairly presented CVI's financial position and that the results of their operation and cash flow for the year ended in conformity with GAAP.  Id.  Therefore, the letter of December 10, 2001, cannot be said to represent a new contract, thereby requiring the invocation of Virginia law.

Under Virginia choice of law principles, tort claims are analyzed under the law of the place of the wrong. Jones v. R.S. Jones & Assoc., Inc., 431 S.E.2d 33, 34 (Va. 1993). The place of the wrong is defined as the place where the last event necessary to make an actor liable for an alleged tort takes place, even if the actor has no control over the location of the last event. Quillen v. Int'l Playtex, Inc., 789

F.2d 1041, 1044 (4th. Cir. 1986).  For example, in a fraud case, the last act necessary is the reasonable reliance on the false representation, not the false representation itself, that causes the injury.  <u>Insteel Indus. Inc.</u>, 276 F.Supp. 2d at 486.  Thus, the law of the state where a plaintiff received and acted upon a defendant's representations controls a fraud claim.

Here, plaintiffs' claims of professional malpractice, constructive fraud, and fraudulent misrepresentation, did not result in injury until the misrepresentations were received and relied upon.  At plaintiffs' insistence, the letter and report of December 10, 2001, were sent directly to Waterside's office in Norfolk, Virginia.  The letter stated that the audits performed by defendants concluded that CVI's accounting was in conformity with GAAP.  Acting upon the information contained in the letter and report, plaintiffs made the decision to provide the loans to CVI.  Therefore, plaintiffs' tort-based claims are controlled by Virginia law.

### 2. <u>Third party beneficiary breach of contract</u>

Under Texas law, to properly assert a breach of contract claim as a third party beneficiary, the party must show that: (1) the contracting parties intended to confer some benefit to the third party, and (2) the contracting parties entered into the contract directly for the third party's benefit.  <u>El Paso Refinery, LP, et al. v. TRMI Holdings, Inc., et al.</u>, 302 F.3d 343, 354 (5th Cir. 2002), (citing <u>MCI Telecomm. Corp. v. Texas Util. Elec. Co.</u>, 995 S.W.2d 647, 651 (Texas, 1999)); <u>see also</u> <u>S. Tex. Water Auth. v. Lomas</u>, No. 05-0855, 2007 WL 1225221 (Tex. Sup.Ct. J. April 27, 2007)(holding that to qualify as one

8

for whose benefit a contract was made, the third party must benefit more than incidentally). In determining the contracting parties' intent, the court is limited to the "four corners of the instrument." El Paso Refinery, 302 F.3d at 354, (citing and quoting Republic Nat'l Bank v. Nat'l Banker's Life Ins. Co., 427 S.W.2d 76, 79-80 (Tex. Civ. App. 1968)).

The engagement letters for auditing services between CVI and HB&A represent the contracts in question.[3] Nowhere in the letters is there an express, or even implied, intent to benefit any other party. The letters outline the "terms and objectives" of the services that HB&A will provide CVI. Neither Waterside nor CapitalSouth are mentioned in the engagement letters.

Moreover, none of the engagement letters in the years following the initial Waterside investment in December 2001 make reference to a third party. Had CVI and HB&A desired to extend a benefit to a third party, as plaintiff suggests it did in December 2001, they could have included such a provision in subsequent engagement letters. Given this lack of intent by the contracting parties to confer a benefit on a third party, the Court concludes that Waterside is not a third party beneficiary, and therefore, its claim for breach of contract must fail. Accordingly, defendants' motion to dismiss plaintiffs' third party breach of contract claim should be GRANTED.

---

[3] On a motion to dismiss, the Court is not required to consider evidence outside of the pleadings. While plaintiffs reference the engagement letters between CVI and HB&A in their complaint, they did not include the engagement letters as an exhibit, thus providing no basis upon which to find them to be third party beneficiaries. Notwithstanding this issue, the Court will entertain the motion to dismiss as if the letters were properly included.

9

### 3. **Professional malpractice**

Professional malpractice is grounded in the tort concept of negligence or the failure of a professional to exercise the proper degree of care. Nelson v. Commonwealth, 368 S.E.2d 239, (holding that the standard for architects is to "exercise the care of those ordinarily skilled in the business" (internal quotations omitted)); Ortiz v. Barrett, 278 S.E.2d 833, 837 (Va. 1981)(holding that the standard for lawyers is to "exercise a reasonable degree of care, skill, and dispatch in carrying out the business for which he is employed.") As evidence of professional malpractice claims being based in tort, the Supreme Court of Virginia has recognized that contributory negligence may be a defense in both medical malpractice actions and legal malpractice actions. See Eiss v. Lillis, 357 S.E.2d 539 (Va. 1987); Lawrence v. Wirth, 309 S.E.2d 315 (Va. 1983); Lyle, Siegel, Croshaw & Beale v. Tidewater Capital Corp., 457 S.E.2d 28 (Va. 1995).

In Forte v. Atkins, No. 33953, 2005 WL 3361219 (Va. Cir. Ct. Aug. 19, 2005) (not reported in S.E.2d), the court analogized accountant malpractice to legal malpractice and devised the following elements of a professional malpractice claim against an accountant: (1)an accountant-client relationship giving rise to a duty; (2) the accountant breached the duty; and (3) the breach of duty was a proximate cause of the claimed damages. Forte, 2005 WL 3361219 at *1-2. The relationship that creates the duty is formed by a contract. Id.; O'Connell v. Bean, 556 S.E.2d. 741, 743 (Va. 2002)(holding that the duties owed by an attorney to a client were created by their contract).

This principle has been extended to an accountant's liability to third parties. In Ward v. Ernst & Young, 435 S.E.2d 628, 631-632 (Va. 1993), the Supreme Court of Virginia specifically addressed the issue. In Ward, the sole shareholder of a corporation sued the accounting firm engaged by the corporation alleging breach of contract and professional negligence. Ward claimed damages in the form of economic losses due to an incorrect valuation of his stock. 435 S.E.2d at 630. The court rejected the Restatement (Second) of Torts § 552, which makes accounting firms liable to persons "for whose benefit and guidance [the accountant] intends to supply the information." Id. at 631. Significantly, the Restatement approach does not require third parties to be in privity of contract. However, in Virginia, the rule requiring privity of contract to recover damages for economic loss under a negligence theory remains intact. Id. at 632.

The case at bar is analogous to Ward. Plaintiffs are alleging professional malpractice and seek damages in the form of economic loss. Plaintiffs essentially contend that HB&A's audit report was negligently conducted, that they relied upon HB&A's positive report of CVI's accounting practices, and that they suffered economic loss as a result. Even though plaintiffs have alleged that HB&A knew that plaintiffs intended to rely upon the information contained in the report, the claim falls short because they cannot establish privity of contract. Accordingly, defendants' motion to dismiss the professional malpractice claim should be GRANTED.

### 4. Constructive fraud/negligent misrepresentation

In a cause of action for constructive fraud (also called negligent misrepresentation), plaintiff bears the burden of proving by clear and convincing evidence: (1) a false representation, (2) of a material fact, (3) made innocently or negligently, (4) reliance by the misled party, and (5) damages resulting from such reliance. See Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 629 (4th Cir. 1999). The claim is related to the previous claim of professional malpractice, except that there seems to be no relationship requirement. However, as applied to this case, the two claims share the characteristics of being based upon the tort concept of negligence and damages in the form of economic loss. As a result, the rule requiring privity of contract where a plaintiff sues for economic loss on a negligence theory applies, and the analysis proceeds similarly to that for professional malpractice.[4]

Although plaintiffs have properly pleaded the general elements for constructive fraud, they are stymied by the fact that HB&A owed them no contractual duty. Plaintiffs cite a footnote in Ward alleging that a lack of privity does not "foreclose a right to recover an economic loss in other tort actions such as those for fraud, conspiracy to injure another in a trade, business, or profession, or tortious interference with contract." Ward, 435 S.E.2d at 632 n.2. However, the distinction is that the torts noted above by the court in Ward were not based on a

---

[4] In Copenhaver v. Rogers, 384 S.E.2d 593 (Va. 1989), the court explained that there are exceptions to the general rule, such as in cases involving personal injury or property damage where the common law privity rules have been modified by statutes such as secions 8.01-223 and 8.2-318, of the Virginia Code. However, in that case as in this one, the exception does not apply and privity is required.

12

theory of negligence, whereas in this case, the alleged form of constructive fraud is. For torts based on negligence, the rule requiring privity is clear, and therefore, defendants' motion to dismiss should be GRANTED.

### 5. **Fraudulent misrepresentation**

Under FRCP 9(b) and Virginia law, a fraud complaint must allege with particularity a false representation of material fact made by a defendant with the intent to mislead, and reasonable reliance on that representation by a plaintiff to its detriment. Kline v. Nationsbank of Va., N.A., 886 F.Supp. 1285 (E.D. Va. 1995). However, a court must balance the rule with the relaxed Rule 8(a)(2) "short and plain statement" requirement, and decide whether, given the nature and facts of the case and circumstances of the parties, the pleading in question is sufficiently particular to give a defendant notice. Id. at 1296 (E.D. Va. 1995)(internal citations omitted).

In the case at bar, plaintiffs allege that the audits of 2001-2003, prepared by defendants for CVI, contained false and misleading information and failed to conform to GAAP, as reported. (Compl. ¶ 100.) Specifically, plaintiffs allege that the value of CVI's assets and the results of their operations were misrepresented and that HB&A did so intentionally. (Compl. ¶ 101.) Plaintiffs specifically requested from defendants the results of the audit of 2001, prior to the initial financing provided to CVI in December, 2001. Plaintiffs allege that in so doing, they relied on defendants' representations to plaintiffs' detriment. (Compl. ¶ 103, 104.)

13

Defendants argue that the claim should be dismissed on the ground of lack of particularity. (Defs.' Mot. to Dismiss at 13.) The Court disagrees. It is sufficiently clear from the complaint that the source of the alleged misrepresentations were the audits and the possibly problematic asset valuations. Plaintiffs have also made it clear that they relied on defendants' report for some measure of assurance of CVI's ability to repay the loans. Essentially, they have stated that they would not have purchased the debentures from CVI but for HB&A's unqualified opinion. (Compl. ¶ 81.) At this stage, the Court finds that the allegations are specific enough to provide defendants notice as to the nature of the claim. Therefore, the motion to dismiss this claim should be DENIED.

### 6. Application of statute of limitations on the third party breach of contract and professional malpractice claims[5]

On matters of procedure, including the basis of a right of action, the law of the forum state governs. See Hansen v. Stanley Martin Cos. Inc., 585 S.E.2d 567, 571-72 (Va. 2003). However, pursuant to the Virginia Code, law does not apply to contracts which are governed by the law of another state, if the right of action in that state would be barred. VA. CODE ANN. § 8.01-247. In other words, if the statute of limitations under Texas law is more restrictive than Virginia's statute of limitations, then Texas law applies. In Virginia, the statute of limitations for actions involving written contracts is five years. VA.

---

[5] Plaintiffs third party breach of contract and professional malpractice claims have been dismissed on the merits for reasons stated in Sections 2 and 3, respectively. Nonetheless, defendants' statute of limitations defenses are addressed herein.

14

CODE ANN. § 8.01-246. Generally, the statute of limitations under Texas law for a breach of contract claim is four years. TEX. CIV. PRAC. & ANN. REM. CODE § 16.004 (Vernon 2002). However, where a breach of contract is the basis for bringing a professional malpractice claim, it may be governed by the two-year statute of limitations for negligence claims. See Burnap v. Linnartz, 914 S.W.2d 142, 148 (Tex. App. 1995)(holding that malpractice claims against lawyers are governed by a two year statute of limitations, regardless of the label attached to the claims, and that separating a claim for legal malpractice into claims for negligence, breach of contract, fraud, or other names does not change the underlying fact that the claims are based on professional negligence). Further, with specific regard to accounting negligence and malpractice, the two-year statute of limitations applies. Eagle Properties, Ltd. v. Scharbauer, 816 S.W.2d 559, 562 (Tex. App. 1991, writ denied.) Therefore, Texas law controls, and both claims (breach of contract and professional malpractice) are covered by the same two-year limitation.

In Texas, a cause of action accrues when a plaintiff can seek a judicial remedy. Brown v. KPMG Peat Marwick, 856 S.W.2d 742, 746 n. 4 (Tex. App. 1993). The facts in Brown indicate that the date of accrual was when the general partners were injured by the alleged negligence of KPMG Peat Marwick. Id. The injury occurred when the managing partner began to profit from self-dealing, which went unreported in KPMG's audit. See id. at 744; 746 n. 4. The discovery rule, which states that the statute of limitations period is tolled until the plaintiff discovers or should have discovered the nature of his injury, does not apply in suits by nonclients charging an auditor with

15

negligence.  Id. at 746.  In Brown, the facts indicate that one of the nonclients easily discovered the details of the malpractice and the court therefore concluded that it would be illogical to hold that the details were inherently undiscoverable to the other nonclients.  Id. at 748.  The court also referenced the underlying policy considerations of statutes of limitations, such as providing auditors with a point of repose.  Id. at 748-49.

At best, plaintiffs can be said to have received and relied upon defendants' audit reports on two crucial occasions: immediately before the initial purchase of debentures in December, 2001, and before the second purchase in August, 2003, which constitute the relevant dates of accrual.  Plaintiffs filed their complaint in December, 2005, and since the discovery rule does not apply, the statute is not tolled, which means plaintiffs brought their claims beyond the two years provided by the statute of limitations.  Plaintiffs breach of contract and professional malpractice claims are barred by the statute of limitations, and therefore, defendants' motion to dismiss these claims should be GRANTED.

### III.  RECOMMENDATION

The Court recommends that defendants' motion to dismiss plaintiffs' third party breach of contract, professional malpractice, and constructive fraud/negligent misrepresentation claims should be GRANTED. Further, the Court recommends that defendants' motion to dismiss plaintiffs' fraudulent misrepresentation claim should be DENIED.

### IV. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within ten days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three days permitted by Rule 6(e) of said rules.

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. See Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

                                                                                     /s/
                                            **James E. Bradberry**
                                            **United States Magistrate Judge**

**Norfolk, Virginia**

    **June 27**    , **2007**

17

<u>Clerk's Mailing Certificate</u>

A copy of the foregoing Report was mailed this date to each of the following:

Ann B. Brogan, Esq.
Frank J. Santoro, Esq.
Kelly M. Barnhart, Esq.
Marcus, Santoro & Kozak, P.C.
1435 Crossways Blvd., Ste. 300
Chesapeake, VA 23320

Brian N. Casey, Esq.
Taylor & Walker, P.C.
555 Main St.
P.O. Box 3490
Norfolk, VA 23514-3490

Jay S. Rothman, Esq.
Marshall S. Gemberling, Esq.
Wilhelm Dingler, Esq.
Marshall, Dennehey, Warner,
 Coleman & Goggin
1845 Walnut St.
Philadelphia, PA 19103

Dante M. Filetti, Esq.
Goodman, Allen & Filetti, PLLC
215 Brooke Ave., Ste. A
Norfolk, VA 23510

Fernando Galindo, Clerk

By _____
         Deputy Clerk

_____, 2007